## CHARLES WATTS *vs.* WASHINGTON TERRITORY.

1 w 409
1 w 367

1 w 409
4    107
29³ 985
1 wt409
34   601

The decision of this court, respecting Territorial jurisdiction, rendered in case of *Watts vs. United States*, affirmed.

The settled adjudications of this court should not be disturbed, except for weighty reasons.

Where a grand jury have been finally discharged and it is made to appear to the court that the public interest would be promoted by re-summoning such jury, it is proper for the court under Sec. 172 of the Practice Act of 1869, to order the sheriff to fill the panel from the bystanders, if all of the original jurors cannot be found.

Where the records of the court disclose that a grand jury appeared in open court and their foreman, in their presence, presented to the court a true bill properly endorsed, it sufficiently appears that the indictment was found by the concurrence of at least twelve jurors as by statute required.

The omission of the word "feloniously," in charging a homicide is not error if the indictment follows the language of the statute.

It was not to the prejudice of the prisoner that the lower court allowed the statute defining the boundaries of the county wherein the offence was committed, to be admitted to the jury.

The instruction of the lower court as to the appearances of danger that justify the taking of life approved.

Error to the Third District holding terms at Port Townsend.

*Frank Clark* for plaintiff in error.

*C. M. Bradshaw,* prosecuting attorney, for defendant in error.

Opinion by LEWIS, Associate Justice.

The *status* of this case as shown by the records of this court is this:

At the September Term, A. D., 1869, of the District Court of the Third Judicial District, the defendant was indicted by a Grand Jury on the part of the United States, for the crime of murder, alleged to have been committed on the Island of San Juan, in the month of June 1869, within "the sole and exclusive jurisdiction of the United States," and within the jurisdiction of said court.

He was put upon trial on the United States side of the court, convicted of murder, and the sentence and judgment of the court was, that he suffer death.

52

From that judgment he appealed to this court, and among the errors assigned to reverse the judgment were the following:

The court erred in refusing to instruct the jury that the island of San Juan is within the limits of the Territory of Washington.

"The court erred in overruling the motion for a new trial for the 10th cause assigned, to-wit:

"Because the evidence showed the homicide to have been committed within *the civil jurisdiction* of the Territory of Washington."

The questions made by the defendant in his assignment of errors, and submitted to this court for decision, were, that the island of San Juan, upon which the murder was committed, was within the civil jurisdiction of Washington Territory, and such offense was cognizable by the Territorial courts, and not by the courts in the exercise of their jurisdiction under the laws of the United States.

The evidence clearly showed that the offense was committed on the island in June, 1869, at which time it was in the joint occupation of the United States and Great Britain.

The opinion of the court in said cause was filed in August, 1871, by Greene, J., Kennedy, J., concurring, and Jacobs, C. J., dissenting; both of which opinions show that the questions involved received much consideration.

The court resolved the points in favor of defendant. The following extract from the opinion of the court covers the questions raised:

"We are of opinion that the jurisdiction of the United States is not 'sole and exclusive' on the island of San Juan, within the meaning of the act of April 30, 1790, that the statute of the Territory against murder, at the time laid in the indictment, was, and still is, in force there, and that the District court of the Third Judicial District, in the exercise of its jurisdiction over all cases arising under the laws of the Territory, had authority to try and punish any person who had committed murder on that island."

The judgment of the District court was reversed, and defendant committed to the custody of the sheriff of the proper county to be proceeded against under the laws of the Territory, on the Territorial side of the court.

Whereupon, at the September term of said District court, A. D., 1871, the case was submitted to a Territorial grand jury, and a bill of indictment was found and presented against the defendant for the crime of murder in the first degree, committed at the county of Whatcom.

At the February term, 1872, of said court, he was tried and convicted under the laws of the Territory of murder in the first degree, and the judgment and sentence of the court was, that he suffer death, and the defendant has again brought his case to this court for review.

Numerous errors have been assigned for the reversal of the judgment of the District court.

It is now insisted by the defendant, that the court below had no jurisdiction under the laws of the Territory, to try and determine the cause. The error assigned as to that point is this:

"The court erred in refusing to charge the jury that if the proof shows that the offense was committed on San Juan Island they *must acquit*, because at the time of the alleged commission of the offense charged, San Juan Island *was not within* the civil jurisdiction of the Courts of Washington Territory."

Fearful that he will obtain, under the laws of the Territory, justice, more than he deserves, defendant now insists that not even the laws of the Territory can reach him.

This court, however, when the defendant was before it, in the case of the *United States vs. Watts*, decided that the District court of the Third Judicial District, in the exercise of its jurisdiction, under the laws of the Territory, had authority to try and punish any person who had committed murder on the island of San Juan; and this ruling of the court was not dictum, but that point had to be determined before the court could discharge him from the custody of the marshal, or commit de-

fendant to the sheriff, to be proceeded against under the Territorial laws.

The defendant now asks that that decision be reviewed and overruled and has made an able argument in support of his views. While we have no doubt as to the authority of this court to re-examine and review any and all decisions heretofore made, yet when the highest tribunal in a State or Territory has determined any question after careful consideration, such decision should not be disturbed except for weighty reasons.

If this court adopt the policy of reviewing its former decisions upon every occasion it is asked so to do, the laws of the Territory will become much more confused than now; nothing will be considered as settled and determined. It were better that we follow the settled adjudications of the court whatever changes be made in the members thereof. We therefore accept the decision heretofore made in the case of the *United States vs. Watts* as the law in the case under consideration, and conclude that the District court had ample jurisdiction of the case.

Defendant further insists that the court erred in overruling his objections to the grand jury.

What were these objections? Not that any of the jurors were not qualified; not that any of these had any prejudice or bias against him; no objection whatever is made on those facts, but the record discloses the fact that after the grand jury had been discharged for the term:

"It was shown to the court that the public interest would be promoted by re-summoning the grand jury in the manner prescribed by law."

A summons was accordingly issued to the sheriff for that purpose, and he proceeded to re-summon the jury, but he could not find all of them, and the court ordered the panel filled from the bystanders, in accordance with the provisions of Sec. 172 of the criminal code, and herein the defendant interposes his objections and claims that the panel cannot be filled until *all* of the former grand jury have been re-summoned. Such a construction is wholly unreasonable and unwarranted and would

tend to defeat the object and purpose of the law, to wit: To enable a court at all times when in session to bring in a grand jury, to the end that persons charged with crime might if probably guilty be put upon trial and, if not guilty, be at once discharged; this is a matter of interest to the public, as well as to the individual citizen, the court very properly, on a return of "not found" as to a part of the jurors, ordered the panel filled.

It is further claimed that the record does not show that twelve grand jurors concurred in finding the bill.

The record shows that the grand jury appeared in open court, and that the foreman in their presence presented to the court the indictment in question, which was filed by the clerk in the presence of the jury; that the indictment was endorsed "a true bill" and such endorsement signed by the foreman of the Grand Jury.

The law declares that no bill shall be found without the concurrence of twelve jurors and that when *so found*, it shall be endorsed, signed and presented to the Court in the exact manner in which this bill was.

No provision has been made for keeping a record of the votes of the Grand Jury, and the law especially declares, that no Grand juror shall be permitted to inform *any person*, in what manner himself or any member of the jury voted upon any question before them.

Now when the grand jury come into open court, and present to the court a bill duly endorsed and signed by the foreman, it is a most solemn declaration on their part, that twelve jurors concurred in finding the bill; in fact it is evidence of the most satisfactory kind, hence the record does show that twelve jurors concurred in finding the bill.

It is also urged that the indictment is bad, for the reason that the offense is not charged with having been committed "feloniously."

The offense is charged in the exact language of the statute, and the law has long been settled that an indictment so charging the offense is good.

It is further claimed that the court erred in admitting in evidence the statutes of Washington Territory defining the boundaries of Whatcom county, as also White and Stevens' maps of the Territory.

The court was bound to take notice of the statutes in question, and it not appearing to the contrary it is presumed that the map was properly admitted; at all events it would have worked no injury to defendant, for the evidence sent up, all agrees that the offense was committed on San Juan Island. No question was made on that point, and if on San Juan Island, the law declares that it was in Whatcom county.

Finally, it is claimed that the court erred in instructing the jury as to the question of self-defense, to wit:

"In order to justify the killing on the grounds of self-defense, there must be a necessity, real or apparent, to prevent death or great bodily harm.

"The prisoner has a right to act on the circumstances as they appeared and are proven, provided you are convinced that the circumstances, as proven, showed in appearance imminent, threatening, present and immediate danger to life, or great bodily harm—the jury and not defendant must be judges of these matters."

We think the above charge is a fair exposition of the law.

The judgment of the District court must be affirmed.